## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60544-CIV-ROSENBAUM
(Consent Case)

NICHOLAS LICAUSI,

      Plaintiff,

v.

SYMANTEC CORPORATION,

      Defendant.

_____/

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court upon Defendant's Motion for Final Summary Judgment and Incorporated Memorandum of Law ("Motion for Summary Judgment"). [D.E. 14]. The Court has carefully considered the Motion, Plaintiff's Memorandum in Opposition [D.E. 26], Defendant's Reply [D.E. 35], Defendant's Statement of Undisputed Material Facts [D.E. 15], and Plaintiff's Disputed Facts [D.E. 26], as well as the attached exhibits and declarations of the various witnesses in this case. The Court also heard oral argument from counsel during a hearing held on June 1, 2009, and is otherwise fully advised in the premises.

### *BACKGROUND*

On April 16, 2009, Plaintiff Nicholas Licausi ("Plaintiff" or "Licausi") filed a one-count Complaint alleging that his former employer, Symantec Corporation ("Defendant" or "Symantec"), violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq*. ("ADEA"). Licausi asserts that he was sixty-five years old and employed as a senior director when, on November 16, 2007, he was "laid off and told his position had been eliminated as a result of a reduction in force." D.E. 1 at 3. Licausi claims that age was a motivating or contributing factor in his termination. More specifically, Licausi contends that Symantec improperly selected Brian Quinn

("Quinn"), a younger Symantec employee (43 years of age at the time of selection), for the then-vacant position of central region director.   Although Licausi's termination occurred during a reduction in force, Licausi frames his ADEA claim as a "failure to hire," basing the claim on his contention that his qualifications were so clearly superior to those of Quinn that the only reason Symantec could have selected Quinn was because of his substantially younger age than Licausi's.

## *MATERIAL FACTS NOT IN DISPUTE[1]*

A.   **Symantec**

Symantec is a software company that provides its clients with security, storage, and management solutions to assist in securing and managing their information.  In December of 2004, Symantec merged with another software company, Veritas Corporation ("Veritas"), completing the merger in mid-2005.  During the period in dispute (late 2007), Symantec was divided into three geographic territories: the Americas, EMEA (Europe, Middle East, Africa) and APJ (Asia, Pacific, Japan).  The Americas territory was further divided into various regions, including five in the United States (northeast, southeast, central, western, and federal), a Canada region, and a Latin America Region ("LATAM").

---

[1]    The Court has set forth the material facts not in dispute based upon its review and consideration of Defendant's Statement of Undisputed Material Facts [D.E. 15], Plaintiff's Disputed Facts [D.E. 26], and declarations of the various witnesses in this case, including any attached exhibits.  The Court further notes that pursuant to Local Rule 7.5.D, all material facts set forth in Defendant's statement and supported by evidence of record are deemed admitted unless controverted by Plaintiff's statement.

While the Court recognizes and considers the Disputed Facts set forth by Licausi in his Opposition to Symantec's Motion for Summary Judgment, those facts do not refute the majority of facts set forth by Symantec.  Instead, Licausi's Disputed Facts, when viewed closely, relate more to Licausi's qualifications for the position of central region director and his belief that he was better suited for the position than Quinn.  In this respect, although the Court has carefully considered Licausi's Disputed Facts, it finds that they do not create any material issues of fact that preclude the Court from granting Symantec's Motion for Summary Judgment.

Four of the five regions in the United States[2] were each headed by a director who then reported to Elizabeth Joyce ("Joyce").  Joyce served as the vice president of the Americas in Symantec's consulting division.  She, in turn, reported to Charles Johnson ("Johnson"), who was the senior vice president of global consulting.  At that time, the LATAM region did not report to Joyce, and instead, reported directly to Johnson.  Symantec's consulting division also contained divisions based upon national practice groups, which were made up of individual consultants with expertise in particular products.  These practice groups were headed by managers/directors who reported to Mitch Rihtarshich ("Rihtarshich").  Rihtarshich was the director of practice groups and he also reported to Joyce.

**B.     Licausi**

Licausi was hired by Symantec[3] in 2005 as a senior director of LATAM when he was sixty-two years old.  Prior to his employment with Symantec, Licausi worked at IBM for thirty-three years. While at IBM, Licausi, among other positions, became a program manager, in which job he managed testing groups, software development groups, and operating system groups.  Thereafter, he became a second-line manager responsible for fifty to sixty employees and managers, and then senior program manager with responsibilities for mid-range software for all of Asia.  In 1991, Licausi was sent to Detroit, where he worked on an information technology ("IT") infrastructure project for General Motors ("GM"). During this time, Licausi was promoted to director, his first executive position at IBM.  Following his work on the GM project, Licausi began running the Latin America

---

[2]     The federal region is the fifth region.

[3]     Licausi actually started with Veritas, which shortly thereafter merged with Symantec.

division, preparing customers for Y2K[4] issues. Later in his employment with IBM, Licausi was assigned to Chicago to work as the client service executive for two large customers.

After retiring from IBM, Licausi went to work for GM as its general director for applications solutions delivery, and he remained in this role for approximately three years. Subsequently, Microsoft recruited Licausi to be the general manager for Latin American services. As noted above, in 2005 Licausi began working at Symantec as the senior director of LATAM. In this position, Licausi first hired a consultant team, and then was responsible for profit and loss for all consultant services in Latin America. Licausi had four managers who oversaw Mexico, Brazil, south Latin America, and north Latin America. Licausi initially reported to various heads of Consulting - Americas, but once Johnson became the head of global consulting, Licausi reported directly to Johnson. According to Licausi, during Licausi's tenure, his group went from two to thirty consultants and had the highest morale of all regions in the world. In Licausi's performance review for 2006, he scored an overall rating of 5, which was the highest score possible at Symantec.

## C.    Quinn

Quinn was initially hired by Veritas after he had been working in the computer software industry for approximately thirteen years.[5] While employed by Veritas, Quinn acted as one of three managing principals of the consulting organization for the central United States and Canada regions

---

[4]    The Y2K problem centered around a computer bug resulting from the practice in early computer program design of representing the year with only the last two digits of the year. This time code ambiguity caused some date-related processing to operate incorrectly for dates and times on and after January 1, 2000. Companies worldwide checked, fixed, and upgraded their computer systems to account for this problem. *See* http://en.wikipedia.org/wiki/Y2K

[5]    During a portion of those thirteen years, Quinn worked as a consultant and, ultimately, a team leader at a database company, Informix. In his role as a team leader, Quinn managed a staff of consultants on various projects. Quinn also became a pre-sales engineer, which involved providing technical support and analysis to potential customers.

and was based out of Detroit, Michigan.  In this position, Quinn managed a group of pre- and post-sales consultants.  After Quinn served for approximately one year in this role, Veritas underwent a restructuring, resulting in Quinn's selection as the sole regional manager for Canada in charge of consulting.  Following service in this position for between three and four years, Quinn was appointed as the senior regional manager for the central United States region.  He again managed a team of consultants involved in pre- and post-sales consulting and also maintained responsibility for profit and loss for the region.

Just prior to the merger with Symantec, Veritas acquired a software company whose primary product consisted of "Enterprise Vault."  According to Quinn,[6] Enterprise Vault is "an archiving and back up solution for companies that has become particularly important for the maintenance and preservation of files and e-mails in connection with electronic discovery in litigation and other data storage needs."  D.E. 21 at 3.  At this time, Quinn was selected to move from the senior regional manager position to be the senior manager for the national practice for Enterprise Vault.  In that position, Quinn managed consultants for the product throughout all of the regions of the Americas.  After Veritas merged with Symantec in 2005, Quinn continued as the senior manager/practice director and reported to Rihtarshich, with whom he had worked at Veritas.  In July of 2006, Quinn was promoted from senior manager to director.

**D.**     **Symantec's Reduction in Force and Selection of Quinn as Central Region Director**

In October of 2007, Joyce and other members of management for Symantec were directed to streamline operations to reduce costs by a significant amount.  Joyce maintains, and Licausi does

---

[6]     The Court attributes the description of Enterprise Vault to the Declaration of Brian Quinn filed contemporaneously with Defendant's Motion for Summary Judgment.  Plaintiff did not dispute Quinn's description and, hence, the Court deems it an undisputed fact.

not dispute, that Joyce was given less than a four-week period to accomplish the task.  In late October of 2007, Joyce met with the managers whom she supervised, including Rihtarshich and three others, to discuss Symantec's desire to reduce costs.  During the meeting, they discussed the possibility of eliminating the separate practice groups and moving the consultants with specific product expertise to the regions.

At the time, the central region director position was vacant.  Consequently, the group also discussed filling the position.  Rihtarshich proposed Quinn, with whom he had worked at Veritas to fill the central region director position.  In support of his suggestion, Rihtarshich stated that he believed that Quinn would be a good fit for the position because he had been with Symantec and Veritas for a combined tenure of seven years.  Additionally, Quinn had headed the Canada region for between three and four years and also had led the central region for approximately a year.  According to Rihtarshich, Quinn already knew the consultants and customers in those areas.  Moreover, Rihtarshich explained, Quinn already lived in the Detroit area, where the central region was based.  Further, because of the length of time he had been employed by Veritas and Symantec, Quinn had technical product knowledge of both Veritas and Symantec products, particularly Enterprise Vault.  Because practice groups were going to be eliminated, Joyce viewed Quinn's knowledge of Enterprise Vault as extremely helpful in order to protect the technical knowledge around the product.[7]  Likewise, Joyce felt that Quinn was a good choice because, in her view, Quinn had grown the practice significantly (the practice area grew from $1.6 million to $8 million in less

---

[7]     According to Joyce, after some debate, the company decided to make a substantial investment of time and talent in the Enterprise Vault and related Veritas products.

than two years).[8]   Additionally, Joyce felt that Quinn had an excellent relationship with the sales team.  Based on all of these facts, Joyce selected Quinn for the central region director position. Joyce admitted that at the time, she did not consider anyone else for the position.

During this same time period (late 2007), Johnson traveled through Latin America to review the development of business.  At that time, Licausi had four managers reporting to him and handled Mexico, Brazil, southern Latin America, and northern Latin America.  After his review, Johnson determined that he could increase efficiency and reduce costs by eliminating the separate managers for southern Latin America as well as northern Latin America and moving those responsibilities to the managers for Brazil and Mexico.  Johnson also decided that with only two managers, there was no need to retain LATAM as a separate region and it made sense to eliminate Licausi's position.  At the time Johnson made this decision, he was directed by upper management to "flatten" Symantec's management structure and reduce costs.  At this point, Johnson had not spoken with Joyce about the specifics of eliminating LATAM and, instead, had spoken to her only about his general ideas for the region.  Johnson, however, was aware that the central region director position was vacant, and he had considered Licausi for the position.

According to Licausi, Johnson indicated that he would speak with Joyce about the central region position.  Licausi also remembers Johnson discussing with him other positions opening up, such as one in the APJ territory.  On October 25, 2007, Licausi sent Joyce an e-mail in which he stated that he thought Johnson had been considering him for the central region because the LATAM

---

[8]   The Court notes that Licausi attributes growth of Enterprise Vault not to Quinn, but instead to the performance of his sales force.  He does not, however, contest the material fact that Joyce perceived Quinn as responsible for growing the practice area significantly.

responsibilities were going to be shifted to the central region.[9]  After receiving Licausi's e-mail, Joyce spoke with Johnson and a member of Human Resources.  During this conversation, Joyce learned that Johnson had decided to eliminate Licausi's position, and Johnson learned that Joyce had selected Quinn to fill the central region position.  The two also addressed the fact that the central region was the most logical place to shift the responsibilities of LATAM.

Upon hearing of Joyce's decision to place Quinn as a director of the central region, Johnson and Joyce reviewed the determination, discussing both Quinn and Licausi.  During their discussion, Johnson agreed that Quinn was best qualified for the job based on his knowledge of the Veritas and Symantec products and his relationships at Symantec.  Johnson further concurred that Quinn would be able to handle the additional responsibilities of LATAM.  In Johnson's view, "LATAM did not need a 'professional manager,' but rather someone who had product expertise and who would be able to obtain and utilize resources from other regions to assist in LATAM."  D.E. 17 at 3.  Johnson and Joyce reasoned that Quinn had more years of product knowledge from Veritas and Symantec than Licausi.  Additionally, unlike Quinn, Licausi had previously operated independently of other regions and, in Johnson and Joyce's view, had not developed the relationships that Quinn had.  They felt that these relationships would be helpful to assist LATAM.

Based on Quinn's qualifications and what Joyce knew about Licausi,[10] she decided to maintain her decision to select Quinn as the director of the central region.  Johnson agreed with Joyce's assessment.  Because Joyce was comfortable with the decision she had made, she did not feel

---

[9]    Symantec decided to move the responsibilities for LATAM to the central region. Thus, these would be additional responsibilities that the director of the central region would acquire.

[10]    Joyce had previously worked with Licausi.

8

it was necessary to conduct interviews for the position. Sometime after October 25, 2007, Licausi spoke to Joyce telephonically to discuss the central region director position.   During the conversation, Joyce informed Licausi that she had already made the decision to place Quinn in the position, but did not discuss the reasons for her selection.

On or about November 9, 2007, Quinn received a telephone call from Joyce, who told him that he had been selected to be the director of the central region.  She later told Quinn that he would take on the additional responsibilities associated with LATAM.  Also in November of 2007, Licausi received a telephone call from Johnson, who told him that he was being terminated due to the elimination of his position with LATAM.  At that time, Licausi told Johnson words to the effect, "I think I have a case for age discrimination."  D.E. 26-2 at 5.  Licausi claims that Johnson replied words to the effect, "I think I have a case for age discrimination also."  *Id.*  However, Johnson claims that he did not give any credence to Licausi's statement and jokingly responded that he was in the same boat.  D.E. 17 at 4.[11]

Licausi, along with all other employees terminated as a result of the reduction in force, was provided the opportunity to look internally for an open position.  Johnson looked into the possibility of Licausi's placement in the APJ region, but no positions were available.  Johnson also attempted to locate a job for Licausi in other areas of the company, but was unsuccessful.  On November 14, 2007, Symantec offered Licausi a severance package, but Licausi rejected the offer.

---

[11]   The dispute, however, is not material to the Motion for Summary Judgment now before the Court and is mentioned merely for completeness.  First, Licausi does not contradict Johnson's assertion that he was joking when he made the remark.  Second, even if Licausi had contradicted the assertion, it would not matter.  Johnson agreed with the decision to select Quinn over Licausi, and there is no suggestion that his opinion was based on a discriminatory reason or that he believed that Joyce's determination was motivated at all by a discriminatory animus. Finally, the Court notes that Licausi did not assert that the alleged remark was direct evidence of age discrimination.

In connection with the reduction in force, numerous other positions at Symantec were eliminated.  In total, Symantec eliminated sixty-one positions.  The employment figures provided by Symantec indicate that of the sixty-one employees terminated, twenty-eight were forty years of age or older (46%), and thirty-three were younger than forty (54%).  And when considering Symantec's 290 total employees, 121 were forty years of age or older, twenty-eight of whom were terminated.  This equates to a twenty-three percent (23%) termination rate among workers in the protected class.  Of the 160 employees under the age of forty, thirty-three were terminated.  This equates to a nineteen percent (19%) termination rate among workers outside of the protected class. Taking a more narrow view (*i.e.,* using Quinn's age of 43 as a guideline), of Symantec's 290 total employees, 86 were older than Quinn, of whom 18, or 21%, were terminated.  With regard to the 204 employees Quinn's age and younger, 43, or 21% had their job eliminated.

## *ANALYSIS*

### A.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Not any factual dispute will defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis in original).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party."  *Miccosukee Tribe of Indians of Fla. v. U.S.*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if "it would affect the outcome of the suit under the governing law . . . ."  *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

10

Following a motion for summary judgment, the Court views the evidence, including all reasonable inferences drawn from it, in the light most favorable to the nonmoving party, and resolves all reasonable doubts against the movant. *Johnson v. City of Mobile*, 2009 WL 724025, at \*4 (11th Cir. March 20, 2009).  Further,  the Court will not weigh conflicting evidence. *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007), *reh'g and reh'g en banc denied*, 245 F. App'x. 803 (11th Cir. 2007).  Thus, upon discovering a genuine dispute, the Court promptly will deny summary judgment. *Id.*

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 2009 WL 977313, \*4 (11th Cir. Apr. 13, 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the nonmoving party must produce evidence, going beyond the pleadings, and by his own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts suggesting that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343.

**B.     Plaintiff's ADEA Claim**

**1.     Establishing an ADEA Violation, Generally**

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges

11

of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA applies to individuals who are at least 40 years of age. 29 U.S.C. § 631(a). "Under the ADEA, a plaintiff claiming disparate treatment bears the ultimate burden of proving that age was a determining factor in the employer's decision to fire him or her." *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). A plaintiff may establish a *prima facie* case of age discrimination in one of three ways: (1) by direct evidence of discriminatory intent; (2) through circumstantial evidence; or (3) through statistical proof. *Id.*

### a.     Direct Evidence

The Eleventh Circuit has held that direct evidence of discrimination is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." *Kilpatrick v. Tyson Foods, Inc.*, 268 F. App'x. 860, 861-62 (11th Cir. 2008). Such direct evidence reflects "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee," and must indicate that the adverse employment decision was motivated by the decision-maker's intent to discriminate based on age. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358-59 (11th Cir. 1999), *cert. denied*, 529 U.S. 1109 (2000) (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998)). As a result, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of a protected classification, constitute direct evidence." *Kilpatrick*, 268 F. App'x. at 862.

### b.     Statistical Evidence

Statistical evidence is also an appropriate method for demonstrating both a *prima facie* case of discrimination and pretext.[12] *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th

---

[12]     The use of statistics to establish pretext is discussed more fully *infra*.

Cir. 1991), *cert. denied,* 502 U.S. 1058 (1992).  Statistics without a proper analytic foundation, however, are "virtually meaningless." *Id*. Instead, the Eleventh Circuit has recognized that statistical evidence of discrimination is relevant only where it narrowly reflects how terminations have affected workers in a similar position and age group to the plaintiff. *Minton v. American Bankers Ins. Group, Inc.*, 2003 WL 21303330, *2 (11th Cir. Feb. 6, 2003) (finding that data was insufficient to establish a *prima facie* case of discrimination when it represented a cross-section of the entire company rather than similarly situated employees).

### c.      Circumstantial Evidence

Where a plaintiff has no direct evidence or statistical proof of discrimination, he may establish a *prima facie* case of age discrimination through circumstantial evidence.  In evaluating whether a plaintiff has established a *prima facie* case under the ADEA through the use of circumstantial evidence, the Eleventh Circuit has adopted a variation of the four-pronged test set out for Title VII claims by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff establishes a *prima facie* case under this test by proving: "(1) that he is a member of the protected group; (2) that adverse employment action was taken against him, *e.g.* discharge, demotion, or failure to hire; (3) that he was replaced by a person outside the protected group; and (4) that he was qualified for the position for which he was rejected." *Carter*, 870 F.2d at 582.[13]

---

[13]      A plaintiff may establish a *prima facie* case of age discrimination under the *McDonnell Douglas* framework even where the age of the person who obtained the position sought falls within the protected class (*i.e.*, 40 years of age or older). *See Carter*, 870 F.2d at 583 ("[W]e have declined to hold that a plaintiff's inability to show that he was replaced by someone under forty is an absolute bar to the establishment of a prima facie case"). This Circuit has cautioned against an overly strict application of the *McDonnell Douglas* framework because a mechanistic approach to the criteria for a *prima facie* case would ignore the basic realities of this form of discrimination. *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1442 (11th Cir. 1985) (holding that a plaintiff who was sixty years old was able to establish a *prima facie* case of

To establish discrimination through indirect or circumstantial evidence, a plaintiff must first establish a *prima facie* case of age discrimination.  Where the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to come forward with evidence of a legitimate, non-discriminatory reason for the challenged employment action. *Perrero v. Spectacor Mgmt. Group*, 308 F. App'x. 327, 329 (11th Cir. 2009) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000)); *see also Vaughan v. Morgan Stanley DW Inc.*, 158 F. App'x. 205, 207 (11th Cir. 2005) (holding that a *prima facie* case creates a presumption of unlawful discrimination, which evaporates once an employer expresses one or more legitimate reasons for its actions), *reh'g and reh'g en banc denied,* 172 Fed. App'x. 994 (11th Cir. 2006).  If the employer meets this burden of production, the burden then shifts back to the plaintiff to come forward with evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons" for the employment action. *Perrero*, 308 F. App'x. at 329 (quoting *Chapman*, 229 F.3d at 1024). In other words, "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether *each* of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Perrero*, 308 F. App'x. at 329 (quoting *Chapman*, 229 F.3d at 1024-25) (emphasis added).

---

age discrimination under the *McDonnell Douglas* framework where he was replaced with an employee who was forty-six years old). "Age discrimination is qualitatively different from race or sex discrimination in employment, because the basis of the discrimination is not a discrete and immutable characteristic of an employee which separates the members of the protected group indelibly from persons outside the protected group." *Id*. Accordingly, "[t]he plaintiff in an age discrimination case may establish a prima facie case merely by establishing that his replacement was younger than he, provided that the discrepancy between the ages, along with any other relevant evidence, is sufficient that a fact finder could reasonably infer age discrimination." *Corbin v. Southland Int'l Trucks*, 25 F.3d 1545, 1549 (11th Cir. 1994).

### d. Licausi Seeks to Establish His Claim Through Circumstantial Evidence

Here, Licausi acknowledges that he has no direct evidence of age discrimination by Symantec. Indeed, Licausi has not pointed to any overt comments, documents, or any other direct indicia of age discrimination. Likewise, although Licausi cites certain statistics in support of his claim, he does not attack the reduction in force ("RIF") as discriminatory and, therefore, is not attempting to use those statistics to support a *prima facie* case. Hence, Licausi endeavors to establish the elements of a *prima facie* case through circumstantial evidence. Accordingly, the Court will address whether Licausi has established his claim through circumstantial evidence.

### 2. <u>Establishing a Failure to Hire Claim Under the ADEA</u>

Initially, Symantec was unsure whether Licausi sought to characterize his action as a "failure to hire" claim or as a termination in connection with a RIF. Through discovery, however, and as acknowledged by Licausi's counsel during the hearing held on June 1, 2009, Licausi's claim is limited to a "failure to hire" claim. Accordingly, the Court will look to the standards applicable to an ADEA failure-to-hire claim.

To successfully assert a claim for failure to hire, a plaintiff must demonstrate the following: "(1) he was a member of a protected class; (2) he applied and was qualified for a position for which the employer was accepting applications; (3) despite his qualifications, he was not hired; and (4) the position remained open or was filled by another person outside of his protected class." *Equal Employment Opportunity Comm'n v. Comcast of Georgia, Inc.*, 560 F. Supp. 2d 1300, 1310 (N.D. Ga. 2008).

In this case, no dispute exists that Licausi was a member of a protected class because he was sixty-five years old at the time of his termination. Nor is the third element in dispute: despite his

qualifications, Licausi was not selected for the position of director of the central region.  Symantec, however, contends that Licausi cannot establish a *prima facie* case under a failure-to-hire theory because Quinn had already been selected for the job when Licausi expressed interest in the position.  Thus, Symantec argues that because the position was not vacant and Symantec was not accepting applications for the position, Licausi cannot establish his claim.

As announced during the hearing held on June 1, 2009, the Court disagrees with Symantec and finds that Licausi has successfully asserted a *prima facie* case for his failure-to-hire claim, at least for summary judgment purposes.  Although Joyce apparently made the decision to place Quinn in the central region, as of October 25, 2007, the time that Licausi expressed interest in the position, the position had not been filled.  Indeed, Quinn had not even been notified that he had been selected for the position until November, 9, 2007, approximately two weeks *after* Licausi relayed to Joyce that he was interested in the position. Moreover, Joyce admitted that prior to informing Quinn of his selection, she discussed with Johnson Licausi's interest in the position as well as whether Quinn should remain selected over Licausi.  In effect, Joyce admitted revisiting the decision to consider Licausi upon learning of Licausi's interest.   Under these circumstances, Symantec effectively accepted Licausi's "application," and it cannot be said that the position had been filled.[14]

Because the Court finds that Licausi has successfully established a *prima facie* case for failure to hire under the ADEA, under *McDonnell Douglas* and its progeny, the burden shifts to

---

[14]   Although neither party addressed the issue of whether the position was filled by another person "outside the protected class," the Court notes that Quinn was 43 years old at the time that Symantec selected him for the position.  As mentioned in footnote 13, *supra*, this fact does not negate Licausi's ADEA claim.  During the June 1, 2009, hearing, counsel for Symantec conceded that although Quinn was 43 years old at the relevant time, a considerable age difference between Licausi and Quinn existed at the time of Quinn's selection.

Symantec to set forth a legitimate, non-discriminatory reason for selecting Quinn as director of the central region.

### 3.    **Defendant's Legitimate Business Reasons**

As noted previously, where the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to come forward with evidence of a legitimate, nondiscriminatory reason for the challenged employment action. *Perrero,* 308 F. App'x. at 329 (11th Cir. 2009) (citing *Chapman*, 229 F.3d at 1024); *see also Vaughan*, 158 F. App'x. at 207 (holding that a *prima facie* case creates a presumption of unlawful discrimination, which evaporates once an employer expresses one or more legitimate reasons for its actions).

Symantec sets forth numerous reasons for selecting Quinn as director of the central region. First, Rihtarshich believed that Quinn would be a good fit for the position because he had been with Symantec and Veritas for combined tenure of seven years.  Additionally, Quinn headed the Canada region for between three and four years and also headed the central region for approximately one year.  Symantec emphasized that based on his years in these regions, Quinn already knew the consultants and customers in those areas.  And, Quinn already lived in the Detroit area, where the central region was based.  Further, because of the length of time he had been employed by Veritas and Symantec, Quinn had technical product knowledge of both Veritas and Symantec products, particularly Enterprise Vault.  Symantec points out that because practice groups were going to be eliminated, it viewed Quinn's knowledge of Enterprise Vault as extremely helpful in Symantec's effort to protect the technical knowledge of the product.  Likewise, Symantec saw that Quinn had grown that practice area from $1.6 million to $8 million in less than two years.  Moreover, Joyce felt that Quinn had an excellent relationship with the sales team.  Based on all of these facts, Symantec,

17

through Joyce, selected Quinn for the central region director position.[15]

The Court finds that Symantec's reasons for selecting Quinn for director of the central region constitute legitimate, non-discriminatory reasons for the challenged employment action. The reasons announced by Symantec do not evidence any discriminatory animus. Because the Court finds that Symantec has met its burden of providing a legitimate, non-discriminatory reason for its actions, under the *McDonnell Douglas* framework, the burden shifts back to Licausi to show that Symantec's reasons were merely pretext and the real reason for its decision was age discrimination.

**4.    Pretext**

To establish that an employer's reasons are pretextual, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004). A reason is not pretext for discrimination, however, "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.*" Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006)) (emphasis in original). As noted above, "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether *each* of the defendant

---

[15]    Likewise, when Quinn's supervisor, Johnson, met with Joyce, he agreed that Quinn was best qualified for the job based on Quinn's knowledge of the Veritas and Symantec products and his relationships at Symantec as well as the other reasons set forth above. Johnson further concurred that Quinn would be able to handle the additional responsibilities of LATAM. In Johnson's view, "LATAM did not need a 'professional manager,' but rather someone who had product expertise and who would be able to obtain and utilize resources from other regions to assist in LATAM." D.E. 17 at 3.

employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Perrero*, 308 F. App'x. at 329 (quoting *Chapman*, 229 F.3d at 1024-25) (emphasis added).

The Court first notes that Licausi can prove pretext by either setting forth adequate statistical evidence or by showing that his qualifications were so far superior to Quinn's, that no reasonable employer would have selected Quinn for the position over Licausi.  The Court reviews each type of evidence in turn.

### a.    Statistics

As with statistical evidence used to establish a *prima facie* case, statistics without a proper analytic foundation are "virtually meaningless" when utilized to establish pretext. *Brown*, 939 F.2d at 952. In order for statistics the carry the plaintiff's burden in establishing pretext, they must negate the reasons given by the employer for the plaintiff's discharge. *Krieg v. Paul Revere Life Ins. Co.*, 718 F.2d 998, 1002 (11th Cir. 1983), *cert. denied*, 466 U.S. 929 (1984).  Furthermore, even if the statistics do show that the employer sometimes discriminates because of age, they must also show that the employer did so in the instant case. *Id*.  Statistical evidence is insufficient to raise an inference of discrimination or pretext where "it fail[s] to compare similarly situated individuals and fail[s] to eliminate nondiscriminatory reasons for the numerical disparities." *Toth v. McDonnell Douglas Aerospace Servs. Co.*, 31 F. Supp. 2d 1347, 1354 (M.D. Fla. 1998).

In the present case, the statistical evidence presented by Licausi lacks analytic foundation and is insufficient to demonstrate that Symantec's non-discriminatory reasons served as a pretext for age discrimination.  The limited statistics offered by Licausi purport to establish that he was the oldest employee at the time of his termination; that of the eleven oldest employees, six were selected for

19

termination (a termination rate of fifty-five percent); and that of the thirty-two employees under thirty, only three lost their jobs (a termination rate of nine percent).  While Licausi offered these statistics to show that the reduction in force was "top-heavy," he specifically stated that he was *not* challenging the reduction in force itself as being discriminatory.[16]  Thus, the Court questions Licausi's use of statistics where they do not appear to be relevant to a determination of whether, in this failure-to-hire case, Symantec's reasons for selecting Quinn were pretextual.  Moreover, even assuming, *arguendo*, that the statistics were relevant to a determination of pretext in a case where Licausi does not challenge the reduction in force as discriminatory, the evidence falls short of establishing that the non-discriminatory reasons offered by Symantec for selecting Quinn over Licausi were merely pretext.

As discussed previously, the Eleventh Circuit has held that statistical evidence of discrimination is relevant only where it narrowly reflects how terminations have affected workers in a similar position and age group as the plaintiff.  *Minton*, 2003 WL 21303330 at *2.  Here, rather than using statistics to make such comparisons with similarly situated employees, Licausi appears to have drawn arbitrary boundaries around certain groups, consisting of the "eleven oldest" employees and those "under thirty."  This approach simply compares one arbitrary group to another without regard to similarly situated employees or even to the workforce as a whole.  More significantly, Licausi leaves the Court with a lack of statistical evidence regarding the termination of any employees between the ages of thirty and the "eleven oldest" employees at Symantec.  In light of the fact that the protections of the ADEA are extended to employees who are forty and older (not

---

[16]   Licausi further acknowledged to the Court that the statistics were not analyzed or considered by a qualified statistician, nor were they conclusive statistical proof of age discrimination in this specific case.

to mention the fact that in this case, the comparator employee was forty-three), Licausi's statistical evidence, at a minimum, does not even account for the possible disparities in treatment between the protected and unprotected class under the statute.  As such, when viewed in the light most favorable to Licausi, the statistical evidence simply does not provide a meaningful comparison between Licausi and other similarly situated employees.

Moreover, the statistics appear to be insufficient to demonstrate that the reduction in force was a pretext for age discrimination against him *specifically* in the selection process for the central region director position.  To the contrary, the circumstances surrounding the reduction in force, when taken as a whole, support the finding that age did not play any role in the selection process for the position.  Licausi ignores the fact that in order to achieve its goal in the reduction in force and "flatten" the management structure, Symantec terminated two significantly younger employees in their forties who also held Licausi's position of senior director of consulting.[17]  Thus, of the three senior director positions eliminated, two were substantially younger than Licausi.  Significantly, the ages of the other two senior directors were much closer to Quinn's age than Licausi's. Nonetheless, no evidence suggests that either of these younger employees were considered for the new open position.  This fact also weighs against the conclusion that age was a motivating factor when choosing someone for the central region director position.

Finally, a broader and more comprehensive evaluation of the effects of the reduction in force also reveals an absence of any notable pattern involving age.[18]  Accordingly, Licausi's statistics fail

---

[17]    The three terminated senior directors of consulting were 65.4, 45.1, and 41.8 years of age.  The one senior director who was retained was 45 years of age.

[18]    A holistic evaluation of Symantec's reduction in force indicates a great deal of parity in the treatment of employees within and without the protected class.  The employment figures

to demonstrate that Symantec's goal of flattening the management structure became tainted by age discrimination when Quinn was selected over Licausi for the central region director position.  In sum, the statistics provided by Licausi are insufficient to show that Symantec's reasons for choosing Quinn over Licausi were pretextual.

        **b.**      **Comparison of Qualifications**

Because the Court has determined that Licausi cannot establish pretext by way of statistical evidence, he must meet his burden by comparing his qualifications to Quinn's.  When a plaintiff seeks to establish pretext by asserting superior qualifications, the test, as established in *Cooper v. Southern Co.*, 390 F.3d 696 (11th Cir. 2004), is "whether the disparities in qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Higgins v. Tyson Foods, Inc.*, 196 F. App'x. 781, 783 (11th Cir. 2006), *reh'g and reh'g en banc denied,* 214 F. App'x. 972 (11th Cir. 2006).  In this context, "'a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason,' as long as 'the reason is one that might motivate a reasonable employer.'" *Roper v. City of Foley*, 177 F. App'x. 40, 49 (11th Cir. 2006) (quoting *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir.

---

provided by Symantec indicate that of the sixty-one employees terminated, twenty-eight were forty years of age or older (46%), and thirty-three were younger than forty (54%).  And when considering Symantec's 290 total employees, 121 were forty years of age or older, twenty-eight of whom were terminated.  This equates to a twenty-three percent (23%) termination rate among workers in the protected class. Of the 160 employees under the age of forty, thirty-three were terminated.  This equates to a nineteen percent (19%) termination rate among workers outside of the protected class.

      When divided by those older than Quinn, on the one hand, and Quinn and those younger than he, any disparity entirely disappears.  Of Symantec's 290 total employees, 86 were older than Quinn, of whom 18 or 21%, were terminated.  With regard to the 204 employees Quinn's age and younger, 43, or 21% had their job eliminated.

2001)); *see also Rowell v. BellSouth Corp.*, 433 F.3d 794, 798-99 (11th Cir. 2005) (explaining that "it is by now axiomatic that we cannot second-guess the business decisions of an employer").

Although Licausi urges the Court to apply the less stringent standard employed by the Ninth Circuit in *Odima v. Westin Tucson Hotel*, 53 F.3d 1484 (9th Cir. 1995) and *Raad v. Fairbanks N. Star Borough School Dist.*, 323 F.3d 1185 (9th Cir. 2003), the Court declines to do so in light of the binding Eleventh Circuit precedent establishing the test set forth above. And, despite the fact that in his Memorandum in Opposition, Licausi cites the Eleventh Circuit opinion of *Higgins v. Tyson Foods, Inc.*, 196 F. App'x. 781 (11th Cir. 2006), as being in accord with the Ninth Circuit cases, a closer review of *Higgins* reveals that the Eleventh Circuit has, in fact, reaffirmed the test set forth in *Cooper*.

The Court is aware, however, that the Supreme Court of the United States in *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006), has denounced the statement in *Cooper* that pretext can be established by comparing qualifications only when "the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face." *Cooper*, 390 F.3d at 732. In *Ash*, the Court found the statement to be both "unhelpful and imprecise," and held that some other formulation would "better ensure that trial courts reach consistent results." *Ash*, 546 U.S. at 457-58. Although the Supreme Court did not offer an alternative standard of review, it was silent with respect to the *Cooper* test, which looks to whether the disparities in qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question. Indeed, since *Ash*, the Eleventh Circuit has reaffirmed the *Cooper* test as the appropriate standard of review when comparative qualifications are a plaintiff's basis for establishing pretext. *See Higgins*, 196 F. App'x. at 783 (reiterating that the

Eleventh Circuit has adhered to the *Cooper* test since the Supreme Court's decision in *Ash*).

Accordingly, the Court finds that when a plaintiff like Licausi seeks to establish pretext by asserting superior qualifications, the test, as established in *Cooper* and followed by the Eleventh Circuit, is "whether the disparities in qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Higgins*, 196 F. App'x. at 783.[19]  Applying this standard, the Court now looks to the qualifications of Licausi as compared to those of Quinn.

There is no disputing that Licausi has had a long and impressive career.  For purposes of this Order, however, the Court summarizes only his qualifications for the position of director of Symantec's central region.  Licausi is a graduate of West Virginia University with a Bachelor of Science degree in aerospace engineering.  In 1968 Licausi joined IBM to work in the Federal Systems Division, and remained employed with IBM for thirty-three years.  While at IBM, Licausi was promoted to program manager where he managed testing groups, software development groups, and operating system groups.  Thereafter, he became a second-line manager supervising fifty to sixty employees and managers, and then senior program manager with responsibilities for mid-range software for all of Asia.  While still with IBM, in 1991, Licausi was assigned to an IT infrastructure project for GM.  During this project, Licausi was promoted to director, his first executive position at IBM.  Following his work on the GM project, Licausi began running IBM's Y2K projects for Latin America, preparing its customers for Y2K conversion.  Subsequently, Licausi was assigned to Chicago to work as a client service executive for two large customers.

---

[19]    During the hearing on Symantec's Motion for Summary Judgment, counsel for Licausi agreed that the *Higgins* "reasonable person" standard, in fact, applied to this case.

After retiring from IBM, Licausi went to work directly for GM as the general director for applications solutions delivery, where he was responsible for all applications and databases maintained by GM worldwide. Licausi remained in this role with GM for approximately three years. Subsequently, Microsoft recruited Licausi to be the general manager for Latin American services where he managed over 400 employees and 1,000 Microsoft partners. As noted above, in 2005 Licausi began working at Symantec as the senior director of LATAM. In this position, Licausi was responsible for profit and loss for all consultant services in Latin America. Licausi oversaw four managers who, in turn, oversaw Mexico, Brazil, south Latin America, and north Latin America. Licausi's performance review for the last year that Symantec completed such reviews (in 2006) indicated an overall score of 5, which was the highest rating possible at Symantec.

While the Court agrees that Licausi's qualifications are extremely impressive and that it appears as though he may well have had the capability to serve as Symantec's director of its central region, the Court's analysis does not end there. In reviewing Licausi and Quinn's qualifications within the context of Symantec's vision of the role of its central region director, the Court cannot find that Symantec discriminated against Licausi when it selected Quinn to fill the position. This is because under the standard utilized by the Eleventh Circuit, the Court cannot find that the disparities in Licausi and Quinn's qualifications were of such a significance that no reasonable employer could have selected Quinn. The Court notes that when comparing qualifications between candidates, "subjective evaluations of a job candidate are often critical to the decision making process." *Chapman*, 229 F.3d at 1033. As the Eleventh Circuit has held, "A subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas* . . . analysis" for making employment decisions. *Id.*

Here, Symantec stated that its primary reasons for selecting Quinn to be the director of the central region were that he, unlike Licausi, had technical product knowledge of Enterprise Vault. And because practice groups were going to be eliminated as a result of the reduction in force, Symantec viewed Quinn's knowledge of Enterprise Vault as extremely helpful in order to protect the technical knowledge of the product. Additionally, Quinn headed the Canada region for between three and four years and, most significantly, he also headed the central region for approximately one year. Thus, Quinn had actual experience performing the job for which he was selected – director of the central region. Symantec also emphasized that based on his years in these regions, Quinn already knew the consultants and customers in those areas – contacts that Licausi did not have. Moreover, Joyce felt that Quinn had an excellent relationship with the sales team and, thus, would be a good fit for the job.

The Court first notes that it is not its role to Monday-morning-quarterback Symantec's business decision. *See Rowell,* 433 F.3d at 798-99 ("it is by now axiomatic that [courts] cannot second guess the business decisions of an employer."). Instead, the Court's inquiry is limited to determining whether any disparity in qualifications between Licausi and Quinn was so great as to create a material issue of fact concerning whether Symantec's stated reasons for selecting Quinn over Licausi were pretextual. The Court finds that it is not. In view of this circumstance, because the reasons proffered by Symantec could have motivated a reasonable employer, Licausi has failed to establish that those reasons are pretextual. *Cooper*, 390 F.3d at 732; *Tippie v. Spacelabs Medical, Inc.*, 180 F. App'x. 51 (11th Cir. 2006)(finding that employer's reasons for selecting applicant for position would motivate a reasonable employer and were consistent throughout the selection process), *cert. denied*, 549 U.S. 1111 (2007).

Nor can Licausi's belief that he was the more qualified candidate establish pretext. *Rowell* 433 F.3d at 799 (personal belief that employee is more qualified is not sufficient to show discriminatory intent on behalf of employer). Indeed, although Licausi may have also been an appropriate choice for the central region director position, this fact does not demonstrate pretext. As noted above, a plaintiff employee may not establish that an employer's proffered reasons are pretextual by merely questioning the wisdom of the employer's reason. *Roper v. City of Foley*, 177 F. App'x. 40 (11th Cir. 2006). As long as the reason is one that might motivate a reasonable employer, no pretext can be found. Here, Licausi offers three reasons why Symantec's explanation for selecting Quinn were pretextual: (1) Licausi claims that his knowledge of consultants in LATAM outweighed Quinn's actual experience in the central region; (2) Licausi had experience with Symantec's products sold in Latin America and knew how those products would work at GM; and (3) although Quinn's employees liked him, morale in LATAM was high.

The problem with Licausi's argument is that none of his reasons establish pretext and, instead, amount only to his personal judgment as to why he was the better candidate. As noted previously, however, it is not for this Court to weigh the better business decision. Nor does Licausi's suggestion that the reasons offered for Quinn's selection were pretextual refute that Quinn had the experience that Symantec relied upon to select him for the position. More significantly, however, Licausi fails to address many of the additional reasons why Symantec selected Quinn for the position. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether *each* of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Perrero*, 308 F. App'x. at 329 (quoting *Chapman*, 229 F.3d at 1024-25) (emphasis added). Finally, Licausi offers as evidence of

27

pretext the fact that Quinn does not speak Portuguese.  However, Symantec and Joyce never suggested that this was a reason for the selection of Quinn.[20]  Thus, this "evidence" cannot establish pretext.

The Court now addresses Licausi's contention that he was not provided with adequate consideration for the central region director position.  According to Licausi, Joyce did nothing to learn about Licausi's strengths.  The Court notes that where, as here, an employer disseminates information about an available position through informal means, the employer has certain duties in considering employees to fill those openings.  Specifically, where an employer utilizes informal means or methods to fill an available position, the employer "has a duty to consider all those who might reasonably be interested" in the available position. *Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270, 1275 (11th Cir. 2002) (quoting *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984)). The employer also has a duty to consider those "who have learned of the job and expressed an interest." *Carmichael*, 738 F.2d at 1133.

Ultimately, however, the ADEA does not impose any added burden on employers to transfer or re-hire laid-off workers in the protected age group.  Rather, it "simply provides that a discharged employee 'who *applies* for a job for which [he] is qualified and which is available at the time of [his] termination must be considered for that job along with all other candidates, and cannot be denied the position based upon [his] age.'" *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344-35 (11th Cir. 2003) (quoting *Jameson v. Arrow Co.*, 75 F.3d 1528, 1531-32 (11th Cir. 1996)).

Under these guidelines, the Court finds that although in Licausi's view Symantec did not give

---

[20]     At most, Joyce noted that Quinn had "spent time" in Brazil because his wife was from there.  No dispute exists with regard to this fact.

him the consideration he desired, Symantec did consider him within permissible parameters for the position. It is also significant that Symantec gave similar consideration to both Quinn and Licausi as candidates for the open position. Even though the selection of Quinn was discussed prior to Joyce's consideration of Licausi, Quinn did not receive any glaringly different consideration that would evidence a discriminatory intent by Symantec. Indeed, Symantec did not interview either Quinn or Licausi for the open position, and when Joyce became aware that Licausi was interested in the director position, she discussed his credentials with Licausi's supervisor, Johnson. In this respect, both of the candidates' (Quinn and Licausi) qualifications were presented by their direct supervisors (Joyce and Johnson). Hence, both candidates were, in essence, represented by individuals who best knew their capabilities. And, although Johnson spoke on behalf of Licausi, he ultimately agreed with Joyce's decision that Quinn was best suited to be the director of the central region.

In a somewhat analogous case, *Walker v. Prudential Property & Cas. Ins. Co.,* 286 F.3d 1270 (11th Cir. 2002), the Eleventh Circuit affirmed the lower court's granting of the defendant employer's motion for summary judgment. More specifically, the Court held that the employer's claim that it hired a male employee rather than one of several female employees based on the employees' relative qualifications for the position, was not shown to be pretextual. *Id.* In *Walker*, after the defendant employer decided to close its Fort Lauderdale office, it sought to fill an open dispatcher position in its Orlando office. Due to time constraints, the employer's human resources manager decided to fill the position quickly. In determining who to select for the opening, the manager reviewed the personnel files of six employees and conducted no interviews. Under these circumstances, the Court found that even if the employer spent only a minimal amount of time reviewing the personnel files,

there was insufficient evidence to show that the employer did not base its decision on qualifications.

Here, Joyce considered both Quinn and Licausi for the position even though she did not interview either of them.  Additionally, there has been no proffered evidence to allow a reasonable factfinder to conclude that Symantec's articulated reason for choosing Quinn was not the real reason. Accordingly, having found that Plaintiff failed to raise a material issue of fact as to whether Symantec's reasons for selecting Quinn were pretextual, the Court finds it appropriate to grant Symantec's Motion for Summary Judgment.

### *CONCLUSION*

_____Accordingly, for the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Final Summary Judgment [D.E. 14] is hereby **GRANTED.**

**DONE** and **ORDERED** at Fort Lauderdale, Florida this 30th day of June, 2009.


ROBIN S. ROSENBAUM
United States Magistrate Judge


cc:    counsel of record